### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **JODI M. NEWCOMB,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:15-cv-463-DBH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge (i) improperly considered materials from a prior claim, (ii) failed to identify the plaintiff's personality disorder as a severe impairment, (iii) neglected to evaluate whether the plaintiff's personality disorder met or equaled Listing 12.08, one of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, (iv) made a mental residual functional capacity ("RFC") determination that did not adequately reflect his findings that the plaintiff had moderate limitations in social functioning and in concentration, persistence, or pace, and (v) erred in not according controlling or greatest weight to the opinions of treating

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 15, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

physician Hal Cohen, D.O., and significant weight to the opinions of treating counselor Patrick McGrath-Conwell, LCPC.  *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 5-15.[2]  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, Finding 1, Record at 54; that she had severe impairments of fibromyalgia with some evidence of degenerative disc disease of the lumbar spine, an organic mental disorder/attention-deficit hyperactivity ("ADHD") disorder, and an anxiety-related disorder/anxiety, not otherwise specified, Finding 3, *id*. at 55; that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings, Finding 4, *id*.; that she retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 404.967(b), except that she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, could understand and remember simple instructions, could accomplish simple tasks on a consistent schedule to complete a workday and workweek, could interact with coworkers and supervisors, but not the general

---

[2] In her statement of errors, in support of her arguments that the administrative law judge erred in his handling of her personality disorder and the opinions of treating sources, the plaintiff referred to an April 2015 report of examining consultant Mimi Wolfenstein, Ph.D., which postdated the administrative law judge's decision and which she submitted for the first time to the Appeals Council.  *See* Statement of Errors at 7-10, 13-15; Record at 7-23.  The commissioner protested that the administrative law judge could not be faulted for ignoring a report that was never presented to him and that the plaintiff had failed to demonstrate, or even argue, that she was otherwise entitled to remand on the basis of the Wolfenstein report.  *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 7-10, 13-15; *Mills v. Apfel*, 244 F.3d 1, 5-6 (1st Cir. 2001) (remand based on submission to the court of evidence provided for the first time to the Appeals Council is warranted only when (i) the evidence is new and material *and* the claimant demonstrates good cause for its belated submission or (ii) the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of the evidence).  At oral argument, the plaintiff's counsel clarified that his client did not contend that the administrative law judge or the Appeals Council erred with respect to the Wolfenstein report.  Accordingly, the report is irrelevant, and I have made no mention of it.

public, and could adapt to occasional routine changes in the workplace, Finding 5, *id*. at 58; that, considering her age (33 years old, defined as a younger individual, on her alleged disability onset date, August 19, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 66; and that she, therefore, had not been disabled from August 19, 2010, through the date of the decision, May 9, 2014, Finding 11, *id*. at 67.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[3]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial

---

[3] This the second decision issued by the administrative law judge with respect to the SSD and SSI applications at issue.  The administrative law judge issued a July 17, 2012, decision denying those applications; however, on October 25, 2013, that decision was vacated by the Appeals Council based on improper exclusion of evidence as a result of a misconstruction of the so-called "five-day rule."  *See* Record at 285-95, 302-03.  The case was remanded for further proceedings, resulting in the issuance of the instant May 9, 2014, decision.  *See id*. at 51-52, 302-03.

evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 2 and 3 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

At Step 3 of the sequential evaluation process, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings.  20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).

## I.  Discussion

### A.  Reference to Prior Claim

The plaintiff first complains that the administrative law judge erred in including, in the record in this case, select materials from a prior SSD/SSI claim, namely, the adverse decision of a different administrative law judge dated August 18, 2010, a Decision Review Board ("DRB") notice dated December 17, 2010, explaining that, because the DRB had not completed its review

during the time allowed, the December 2010 decision had become the final decision of the commissioner, and a January 6, 2012, decision of this court recommending affirmance of the 2010 decision.  *See* Statement of Errors at 5; Record at 219-30, 240-42, 244-61.  The recommended decision was affirmed on January 24, 2012.

The plaintiff contends that these materials were highly prejudicial, particularly the administrative law judge's credibility assessment and finding that the plaintiff had no severe impairment at Step 2.  *See* Statement of Errors at 6.  She argues that the administrative law judge clearly took this "irrelevant and prejudicial information" into consideration, given that he was "highly selective" in choosing which exhibits to include from the prior claim and referred to the December 2010 decision during each of two hearings held in this case (on June 5, 2012, and March 27, 2014) as well as in his May 9, 2014 decision.  *Id.* at 5-7; *see also* Record at 77, 160.  She argues that this conduct violated her rights to due process and to a fair *de novo* hearing, *see* Statement of Errors at 5, contending that prejudice is apparent from the administrative law judge's own words in his unfavorable decision, in which he referred to the 2010 case as "this case," *id.* at 6-7.

"[A]pplicants for social security disability benefits are entitled to due process in the determination of their claims."  *Holohan v. Massanari,* 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart,* 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations.").  "At a minimum, the Constitution requires notice and some opportunity to be heard.  Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands."  *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II,* 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles,* 478 F.3d 46, 47

(1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process [.]") (citations and internal quotation marks omitted).

To be entitled to remand on this basis, a Social Security claimant must demonstrate not only the existence of a due process violation but also resulting prejudice. *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's [administrative law judge's] failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing.").

The plaintiff fails to show either the existence of a procedural due process violation or resulting prejudice.

The plaintiff identifies no specific objectionable remark made by the administrative law judge during the June 5, 2012, hearing. *See* Statement of Errors at 5-7. As the commissioner points out, *see* Opposition at 4-5, although the plaintiff identifies specific comments made during the March 27, 2014, hearing, she misunderstands them. She asserts that the administrative law judge "asked the Plaintiff's representative what had changed since the unfavorable decision on [the] prior claim." Statement of Errors at 6 (citing Record at 88). She protests that she does not have the burden to show that there was new evidence that would have changed the determination on the prior claim, which covered a different alleged period of claimed disability. *See id.*

However, in the cited portion of the hearing transcript, the administrative law judge made no such inquiry. Rather, he asked what evidence was new, as of the date of the second hearing in this case, that would have changed the opinions of agency reviewers Brian Stahl, Ph.D., and Mary A. Burkhart, Ph.D. *See* Record at 87-88; *see also id*. at 268-70, 852-65. Those opinions, issued in 2011, were provided in connection with this case, not the 2010 decision. *See id*. at 268-70, 852-65.

As the commissioner observes, *see* Opposition at 5-6, the plaintiff also misunderstands the excerpt from the May 9, 2014, hearing decision on which she relies. She notes that the administrative law judge stated, "On July 17, 2012, the undersigned issued an unfavorable decision **in this case** finding the claimant not disabled under Title II and Title XVI of the Social Security Act." Statement of Errors at 5 (quoting Record at 51) (emphasis added by plaintiff). However, the administrative law judge clearly referred not to the December 2010 decision of his colleague but to the earlier decision that he had issued in this case, which was vacated by order of the Appeals Council dated October 25, 2013. *See* Record at 51-52. Pursuant to that order, this case was remanded for further proceedings, which included the second (March 27, 2014) hearing. *See id.*

As the commissioner argues, *see* Opposition at 3, the plaintiff fails to demonstrate that the mere fact that the administrative law judge included, as exhibits in the transcript of this case, unfavorable decisions on her prior claim constitutes a deprivation of her rights to due process or to a *de novo* hearing or was in any respect prejudicial. The administrative law judge explained, during the March 27, 2014, hearing, that he made the 2010 decision an exhibit because it was "agency practice and procedure in subsequent applications to include a prior ALJ's decision in the exhibit file[.]" Record at 81. The plaintiff does not argue that this statement was incorrect, let alone indicative of the prejudgment of her case. *See* Statement of Errors at 5-7.

In any event, as the commissioner points out, *see* Opposition at 4, the administrative law judge did not simply parrot findings from the 2010 decision. Rather, he discussed the evidence that had been submitted in connection with this case, identifying additional impairments and limitations that his colleague did not even consider, *compare* Findings 3, 5, Record at 55, 58 *with* Findings 3, 5, *id*. at 223, 225. [4]

### B. Failure to Find a Severe Personality Disorder Impairment

The plaintiff next argues that the administrative law judge erred in failing to find a severe impairment of personality disorder, noting that she had been diagnosed with that disorder by several treating psychiatrists. *See* Statement of Errors at 7-8. This argument is unavailing for at least two reasons, as the commissioner notes. *See* Opposition at 6-9.

First, the records cited by the plaintiff that were available to the administrative law judge contain nothing more than a bare diagnosis. *See* Statement of Errors at 7; Record at 1221, 1223, 1225, 1291, 1294, 1312. "[A] diagnosis[,] . . . standing alone, does not establish the severity of the disease nor the limitations that result for a particular individual." *Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). As counsel for the commissioner observed at oral argument, the plaintiff identifies no record evidence of limitations stemming from

---

[4] Although the plaintiff fails to reference a specific objectionable remark made during the June 5, 2012, hearing or cite any page number(s) of the transcript of that hearing, *see* Statement of Errors at 5-7, she may have meant to identify an exchange at pages 167-68 during which, after noting that the plaintiff's alleged onset date of disability was August 19, 2010, one day after the issuance of his colleague's adverse 2010 decision, the administrative law judge asked the plaintiff's counsel to explain "how the condition changed in between August 18th and August 19, 2010[,]" Record at 168. Counsel responded: "It didn't and that's not part of my burden." *Id*. The administrative law judge rejoined, "Well, [the plaintiff] has been adjudged or adjudicated not disabled through August 18, 2010, and you have the burden to establish the presence of medically determinable impairments . . . their severity . . . and their effect on the ability to perform work related functions, so I'm asking you." *Id*. Counsel acknowledged that his client carried this burden but inquired whether the administrative law judge felt he was "able to impartially evaluate this case, not[]withstanding that a colleague in this office issued a prior unfavorable decision[.]" *Id*. The administrative law judge stated, "Absolutely. . . . That's my duty and if I felt otherwise, . . . I would not be having this hearing today. . . . I'm just trying to understand the issues in the claim." *Id*. at 168-69. Even taking this colloquy into account, it does not demonstrate that the administrative law judge prejudged this case based on the prior unfavorable ruling of his colleague; he said the contrary.

her personality disorder, let alone evidence that any such limitations were different in kind or degree from those assessed by the administrative law judge. Thus, even assuming that the administrative law judge erred, the error cannot provide a basis for remand. *See, e.g.*, *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

Second, the plaintiff did not fairly place the administrative law judge on notice that she claimed to have a severe personality disorder. When, as here, "a claimant is represented, the ALJ [] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Commissioner of Soc. Sec.*, No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (citation and internal quotation marks omitted).

As the commissioner observes, *see* Opposition at 8, in *Degenhardt v. Astrue*, No. 1:11-cv-262-JAW, 2012 WL 1077456 (D. Me. Mar. 29, 2012) (rec. dec., *aff'd* Apr. 18, 2012), this court rejected a claimant's argument that an administrative law judge erred in failing to find a severe personality disorder in circumstances in which the record contained diagnoses of the disorder by a state agency consulting psychologist and a treating mental health provider but the plaintiff cited no evidence that he made the administrative law judge aware that he was claiming personality disorder as an impairment, *see Degenhardt*, 2012 WL 1077456, at *3. The court noted that the claimant's hearing memorandum listed personality disorder under the heading "Mental Health . . . Axis II," but then listed, under the heading "Assessment," only anxiety disorder and depressive disorder. *Id.* at *3 n.3 (internal quotation marks omitted). It found that "[t]his entry cannot

reasonably be read to put the administrative law judge on notice that the plaintiff was claiming disability due to a personality disorder." *Id.*

In similar fashion, here, in an appendix to the plaintiff's hearing memorandum, she listed her severe medically determinable impairments as depression/anxiety/ADHD and fibromyalgia/myalgia. *See* Record at 722-23. Although personality disorder was mentioned twice in record excerpts supporting the former category, once under Axis II and once as a diagnosis, *see id.*, that did not suffice to highlight that the plaintiff claimed it as a severe Step 2 impairment. As in *Degenhardt*, there was no mention of personality disorder in the body of the memorandum. *See id.* at 719-21.

The administrative law judge, thus, did not err in failing to find a severe personality disorder impairment.

### C.  Failure To Analyze Whether Personality Disorder Met or Equaled Listing 12.08

Should the court agree that the administrative law judge did not err in failing to find a severe impairment of personality disorder, that conclusion is dispositive of the plaintiff's argument that he also erred in failing to analyze whether that impairment met or equaled Listing 12.08. *See* Statement of Errors at 8-12. Hence, I do not reach the commissioner's alternative argument that the plaintiff's point of error falls short on its merits. *See* Opposition at 9-12.

### D.  Failure To Reflect Moderate Mental Limitations in RFC

The plaintiff next argues that the administrative law judge failed to assess an RFC adequately reflecting the moderate limitations in social functioning and concentration, persistence, or pace that he found her to have. *See* Statement of Errors at 12-13.

She contends that (i) "[m]any of the federal circuit courts of appeal have held that an ALJ cannot account for a claimant's limitations in concentration, persistence and pace by simply restricting an individual to simple routine tasks or unskilled work[,]" and (ii) "[a] moderate

restriction in social functioning means that [she] has some limitations in her ability to interact with coworkers and supervisors[,]" not only with the general public.  *Id.*

With respect to social functioning, as the commissioner points out, *see* Opposition at 14, the plaintiff cites no authority for the proposition that a moderate restriction in this category necessarily translates into restrictions on dealing with coworkers and supervisors as well as the general public, *see* Statement of Errors at 13.  Indeed, as the commissioner observes, this court has held to the contrary.  *See* Opposition at 14; *Tilton v. Colvin*, No. 2:13-cv-96-GZS, 2014 WL 294477, at *5 (D. Me. Jan. 27, 2014).

At oral argument, the plaintiff's counsel sought to distinguish *Tilton* on its facts, asserting that, there, the administrative law judge pointed to evidence that (i) the claimant was "able to maintain relationships with family," had "a good support group with her friends[,]" had found a new boyfriend, and was "able to shop and attend school functions when necessary[,]" and (ii) there were no reports of difficulties interacting with treating and examining practitioners or their staff members.  *Tilton*, 2014 WL 294477, at *3.  In addition, he noted, the administrative law judge chose to credit the claimant's allegations of difficulties being among strangers in finding that she was unable to interact appropriately with the public.  *See id.*

By contrast, he argued, in this case there was evidence consistent with a finding of difficulty interacting with coworkers and supervisors, including (i) the plaintiff's testimony that she did not trust people and was only able to advocate for herself in court child visitation proceedings because of the support she received from her sister and from the "ACT" team [Assertive Community Treatment Services for Adults, provided by Counseling Services, Inc. ("CSI")], Record at 107, 109-10, (ii) the plaintiff's sister's testimony that she had to help the plaintiff interact with others and that the plaintiff shuts down in social settings, *see id.* at 129,

(iii) McGrath-Conwell's opinion that the plaintiff had a marked inability to interact with others and suffered from fear, paranoia, and distrust, *see id*. at 1329, and (iv) Dr. Cohen's opinion that she required the highest level of supervision, *see id*. at 1182.

The plaintiff's counsel contended at oral argument that the administrative law judge erred in failing to assess at least some degree of limitation in his client's ability to work with coworkers and supervisors.  He posited that even a slight degree of restriction in working with coworkers would have ruled out the three jobs that the vocational expert testified a person with the RFC found by the administrative law judge could perform, given that all of those jobs require interaction with coworkers.  *See id*. at 67, 147, 149; *Dictionary of Occupational Titles* § 239.567-010 (U.S. Dep't of Labor 4th ed. 1991).

Nonetheless, as counsel for the commissioner rejoined, the administrative law judge pointed to evidence to the contrary.  The administrative law judge explained that, although the plaintiff had testified that she did not have an active social life and had difficulty interacting with others – as a result of which she found it difficult to go into a crowded store or use public transportation – she was capable of using the bus to get to her appointments and shop for necessities, took a road trip to Vermont with a friend, was attending group therapy and making friends within her group, regularly attended AA meetings, enjoyed her walking group, went to the gym, traveled to Canada to visit with her children, reported maintaining a relationship with a boyfriend, received support from her family, spent time with her mother, attended her sister's wedding, was helping her sister with her cleaning business, and later stated that she would like to find a night job in order to work with her friend during the day.  *See* Record at 57.

In view of this, as counsel for the commissioner argued, there is no material distinction between the rationale offered by the administrative law judge in *Tilton* and that offered in this case.

As in *Tilton,* the administrative law judge identified substantial evidence tending to show that the plaintiff had no limitation in interacting with supervisors and coworkers.  To the extent that the Cohen and McGrath-Conwell opinions indicate otherwise, the administrative law judge supportably rejected them for the reasons discussed below.

With respect to concentration, persistence, or pace, the plaintiff suggests, based on citation to authority from other jurisdictions, that assessing a restriction to simple tasks or unskilled work to accommodate a moderate limitation in concentration, persistence, or pace is *per se* reversible error.  *See* Statement of Errors at 12 (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  This argument also is unavailing.

As the commissioner notes, *see* Opposition at 12-13, this court has held that the assessment of a similar restriction to reflect a moderate limitation in concentration, persistence, or pace is not error if adequately explained, *see, e.g., Henderson v. Astrue*, No. 2:10-cv-122-GZS, 2011 WL 1130880, at *2 (D. Me. Mar. 25, 2011) (rec. dec., *aff'd* Apr. 12, 2011), and that, even if it is error, it does not warrant remand if it is more favorable than the record supports, *see, e.g*., *Veach v. Commissioner, Soc. Sec. Admin*., No. 1:13-cv-76-DBH, 2014 WL 35362, at *4 (D. Me. Jan. 6, 2014).  She contends that the administrative law judge adequately explained his RFC and, even if he did not, the error is harmless.  *See* Opposition at 12-14.

As the plaintiff's counsel acknowledged at oral argument, the administrative law judge did not merely restrict the plaintiff to simple, routine tasks or unskilled work, despite limitations in concentration, persistence, or pace.  He found that she could understand and remember simple instructions and accomplish simple tasks *on a consistent schedule to complete a workday and workweek*.  *Compare* Finding 5, Record at 58 *with Mascio*, 780 F.3d at 638 ("As Mascio points

13

out, the ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.").  He, therefore, addressed the plaintiff's ability to stay on task, materially distinguishing this case from *Mascio* and *Winschel*.

Second, the plaintiff's counsel did not contest the commissioner's arguments that the administrative law judge had adequately explained his RFC finding and that, even if he did not, any error was harmless.  Instead, he argued that, to the extent that this court's precedent clashes with the rulings of *Mascio* and *Winschel* that an administrative law judge cannot account for restrictions in concentration, persistence, or pace by restricting a claimant to simple, routine tasks or unskilled work, this court should reconsider its rulings to the contrary.

Yet, a careful reading of *Mascio* and *Winschel* persuades me that there is no inconsistency. As in *Henderson*, the *Mascio* and *Winschel* courts recognized that an administrative law judge might be able to explain how a limitation to simple, routine tasks or unskilled work addressed a moderate limitation in concentration, persistence, or pace.  *Compare Henderson*, 2011 WL 1130880, at *2 ("[I]t is the absence of explication by the decision-maker of the reasoning leading from such moderate limitations to 'no more than moderately complex tasks commensurate with a high school education,' rather than the fact that such a conclusion was drawn, that requires remand.") (citation omitted) *with Mascio*, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity.  For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.  But because the ALJ here gave no explanation, a remand is in order.") (citation omitted);

14

*Winschel*, 631 F.3d at 1181 (administrative law judge erred when, despite finding a moderate limitation in concentration, persistence, or pace, he "did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical [question to the vocational expert]").

The plaintiff, accordingly, fails to demonstrate her entitlement to remand based on the administrative law judge's asserted failure to reflect, in his RFC determination, moderate limitations in social functioning or in concentration, persistence, or pace.

### E.  Handling of Treating Source Opinions

The plaintiff lastly seeks remand on the basis that the administrative law judge erred in largely rejecting the opinions of both Dr. Cohen and McGrath-Conwell.  *See* Statement of Errors at 13-15.  I find no error.

### 1.  Dr. Cohen

In a letter dated May 14, 2012, Dr. Cohen stated:

[The plaintiff] has been under my medical care for more tha[n] a decade.  She suffers from ADHD, depression, anxiety, fibromyalgia and alcohol dependency, (now in remission).  In my opinion, she has no capability of performing in the work place without completely failing.  She has significant impairment in her executive functions; i.e., she has poor concentration, poor persistence, and dismal problem solving ability.

In order for [the plaintiff] to be safe and sound in this world she needs the highest level of supervision, the highest level of out patient medical and psychological health care.  When she received this from ACT she actually did quite well.  She truly does need maximal level of support from CSI, medication management, a case manager, ongoing therapy, and an NP [nurse practitioner] prescribing her medications that were staples of the program.  Without this I predict that [she] will regress.

Record at 1182.  On March 14, 2013, Dr. Cohen stated in a portion of a treatment note bearing on the plaintiff's anxiety: "[S]he has no capacity for work because she fares terribly under any stress." *Id*. at 1253.  On March 3, 2014, Dr. Cohen also completed a fibromyalgia RFC form, indicating,

*inter alia*, that the plaintiff had chronic pain in every listed area of the body, would constantly

experience pain or other symptoms severe enough to interfere with the attention and concentration

needed to perform even simple work tasks, was incapable of even a low stress job, and would need

to take daily unscheduled breaks during an eight-hour workday.  *See id*. at 1336-37.  Dr. Cohen

checked indicating that the plaintiff had the following fibromyalgia symptoms: multiple tender

points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent severe

headaches, anxiety, panic attacks, depression, and chronic fatigue syndrome.  *See id*. at 1335.

> The administrative law judge gave "little weight" to Dr. Cohen's statements, explaining:

> > Dr. Cohen's opinion with respect to poor concentration, persistence and problem solving ability is inconsistent with his own treatment notes indicating that the [plaintiff's] symptoms are either significantly improving, or stable, and well managed on her medications.  In addition, the medical evidence of record contains a significant number of office visits, during which Dr. Cohen does not even assess her mental impairments or comment on her mental status.  Moreover, Dr. Cohen's limiting opinion with respect to the [plaintiff's] executive functioning is inconsistent with her level of daily activity, including her ability to maintain sobriety, persevere through a child visitation hearing, and develop effective coping mechanisms.  Dr. Cohen's assessment that the [plaintiff] will decompensate if she does not continue[] with her psychotherapy is offered in the context of maintaining her Mainecare insurance for such services and is given little weight with respect to assessing . . . the potential for any extended duration episodes of decompensation.  Finally, Dr. Cohen's conclusory opinion that the [plaintiff] is not capable of functioning in the workplace touches upon an issue reserved to the Commissioner.

*Id.* at 63-64 (citations omitted).

> The plaintiff complains that, without the benefit of consultation with a qualified expert

regarding the plaintiff's fibromyalgia or mental impairments, and without acknowledging many of

Dr. Cohen's individualized opinions concerning specific work functions such as the need to be

predictably reliable in attendance, the administrative law judge wrongly rejected the Cohen

opinions (with the single exception that he deemed her fibromyalgia severe).  *See* Statement of

Errors at 14.  She argues that Dr. Cohen's opinions were consistent with ACT treatment records,

Dr. Cohen's own treatment records, and psychiatric evaluations from the plaintiff's psychiatrists. *See id*. at 13-14 (citing Record at 14-17, 1183-87, 1223). She asserts that, because Dr. Cohen had treated her for more than 10 years, he was in the best position to assess effects of her fibromyalgia and severe mental impairments on her RFC. *See id*. at 14-15. Therefore, she states, Dr. Cohen's opinions should have been accorded greatest or controlling weight. *See id*. at 15.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id*.[5] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id*. ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

---

[5] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The administrative law judge satisfied this standard, supportably finding Dr. Cohen's opinions inconsistent with:

1.      His own treating notes, which tended to show that the plaintiff was successfully managing her ADHD, depression, and anxiety with medication, *see, e.g.*, Record at 1248-49, 1332-33, 1339-40;

2.      Other contemporaneous treatment records indicating that the plaintiff's mood was good, her affect bright, and her concentration intact, *see, e.g., id*. at 1193, 1232-37;

3.      The plaintiff's significant daily activities, *see, e.g., id*. at 59-61;

4.      The plaintiff's successful efforts to maintain sobriety, *see, e.g., id*. at 1355; and

5.      Her documented coping skills, *see, e.g., id*. at 1176-77.

When a treating source's opinion is inconsistent with his "own progress notes and those of other treating and examining practitioners," "[t]he highlighted inconsistencies, in themselves, constitute 'good reasons' to reject the [] opinion." *Allen v. Astrue*, No. 2:10-cv-35-DBH, 2010 WL 5452123, at *5 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 18, 2011).

As the commissioner notes, *see* Opposition at 17, with respect to fibromyalgia, the administrative law judge also cited evidence tending to show that the plaintiff was not as limited by that impairment as Dr. Cohen found; for instance, that she did not report significant muscle and body pain until she received a birth control shot in January 2011, several months after she applied for SSI and SSD benefits, *see* Record at 59, 965-70, Dr. Cohen noted in February 2012 that her fibromyalgia pain was "well managed with present regime of exercise[,]" *id*. at 60, 1162, Dr. Cohen noted in September 2012 that Lyrica had significantly reduced her fibromyalgia pain and in December 2012 that her fibromyalgia pain was under control, *see id*. at 60, 1259, 1265, and, in January 2014, consultative examiner Michael Liens, D.O., noted that, although the plaintiff had

reduced range of motion and tenderness in her spine, the remainder of her examination was within normal limits, *id.* at 61, 1282.

As the commissioner suggests, *see* Opposition at 19, none of the plaintiff's remaining points requires a different outcome.  While Dr. Cohen's longtime treatment of the plaintiff was relevant, it did not compel a different conclusion than that reached by the administrative law judge.  The administrative law judge was not required to discuss every detail of every Cohen opinion. *See, e.g.*, *Golfieri,* No. 06-14-B-W, 2006 WL 3531624, at *4.  Finally, while the plaintiff makes a passing argument that the administrative law judge should have consulted a medical expert prior to rejecting the opinions of the treating sources, see Statement of Errors at 14, she cites no authority for that proposition and does not explain how it would have affected his assessment of those opinions.

### 2.  McGrath-Conwell

The record also contains two opinions from treating counselor McGrath-Conwell: a mental impairment questionnaire completed on May 29, 2012, and a letter dated January 21, 2014.  *See* Record at 1211-16, 1329.  In the 2012 questionnaire, McGrath-Conwell indicated, *inter alia*, that the plaintiff probably could not maintain regular attendance and be punctual within customary and usually strict tolerances, probably could not consistently complete a workday or workweek without interruptions from psychologically based symptoms, probably could not perform at a consistent pace without more than the minimum number and length of required breaks, and probably could not maintain attention for two-hour segments in the course of a typical workday.  *See id.* at 1213. He indicated that, with respect to the majority of listed work functions, the plaintiff's diminished ability would likely be readily apparent most of the time.  *See id.* at 1214-15.

In his 2014 letter, McGrath-Conwell affirmed that, apart from the fact that the plaintiff had developed agoraphobia, his opinions remained the same. *See id*. at 1329. He explained, *inter alia*, that the plaintiff "struggles hourly to manage her anxiety therefore struggles to attend to her daily activities[,]" has "a constant belief that a worst case scenario is going to occur leaving her unable to interact well with others and to sustain attention to detail[,]" has developed controlling behaviors and "a marked inability to interact with others[,]" has a "clear deficit" in concentration, and is "not a candidate for employment because her employer would suffer immediately from her lack of follow through on all levels of demands in the job." *Id*.

The administrative law judge accorded little weight to these opinions, explaining that, (i) although McGrath-Conwell indicated in 2012 that he based his opinion on his clinical findings and resulting diagnoses, he is not an acceptable medical source for diagnostic purposes, (ii) his treatment records, for the most part, did not assess the plaintiff's mental status but instead concentrated more on her physical pain, and (iii) his opinions were inconsistent with other evidence of record, including treatment notes from CSI providers indicating, for example, that approximately eight weeks prior to completion of the 2012 questionnaire, the plaintiff presented as cooperative and pleasant with a good smile and bright affect, and that one month after the completion of the 2014 letter, her overall mood was stable, she denied experiencing any depressive symptoms, and her anxiety was noted to be generally controlled with medication. *See id*. at 64-65.

The plaintiff argues that McGrath-Conwell's opinions should have been "accorded significant weight pursuant to Social Security Ruling 06-03p." Statement of Errors at 15. As the commissioner points out, this constitutes the entirety of her argument: she makes no attempt to apply the principles of SSR 06-03p to the facts of this case. *See* Opposition at 14-15. Accordingly,

the argument is waived.  *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, as the commissioner argues in the alternative, the administrative law judge's handling of the opinions satisfies the standards of SSR 06-03p.

McGrath-Conwell, a counselor, is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  However, "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) . . ., [the commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work."  *Id.* §§ 404.1513(d), 416.913(d).

SSR 06-03p provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity.  Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 333.

The administrative law judge's handling of the McGrath-Conwell opinions met this standard.  He explained the weight that he had given the opinions and why.  Moreover, although SSR 06-03p, in contrast to regulations pertaining to the handling of treating source opinions, does not require that an adjudicator articulate "good reasons" for the rejection of an "other source's"

opinion, *compare id. with* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), the administrative law judge did that as well.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of July, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge